IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, and STATE OF LOUISIANA, <br><br> *Plaintiffs*, <br><br><br> v. <br><br> AT&T INC., and CENTENNIAL COMMUNICATIONS CORP., <br><br> *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 1:09-cv-1932 (HHK)

## FINAL JUDGMENT

WHEREAS, plaintiffs, United States of America and State of Louisiana, filed their Complaint on October 13, 2009, plaintiffs and defendants, AT&T Inc. ("AT&T") and Centennial Communications Corp. ("Centennial"), by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by defendants to assure that competition is not substantially lessened;

AND WHEREAS, plaintiffs require defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to plaintiffs that the divestitures required below can and will be made, and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. **Jurisdiction**

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. **Definitions**

As used in this Final Judgment:

A. "Acquirer" or "Acquirers" means the entity or entities to whom defendants divest the Divestiture Assets.

B. "AT&T" means AT&T Inc., a Delaware corporation, with headquarters in Dallas, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Centennial" means Centennial Communications Corp., a Delaware corporation, with its headquarters in Wall, New Jersey, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents,

2

and employees.

D.  "CMA" means cellular market area which is used by the Federal Communications Commission ("FCC") to define cellular license areas and which consists of Metropolitan Statistical Areas ("MSAs") and Rural Service Areas ("RSAs").

E.  "Divestiture Assets" means each mobile wireless telecommunications services business to be divested under this Final Judgment, including all types of assets, tangible and intangible, used by Centennial in the operation of its mobile wireless telecommunications services businesses in each of the following CMA license areas:

(1)  Lafayette LA MSA (CMA 174);

(2)  Alexandria LA MSA (CMA 205);

(3)  LA RSA 3 (CMA 456);

(4)  LA RSA 5 (CMA 458);

(5)  LA RSA 6 (CMA 459);

(6)  LA RSA 7 (CMA 460);

(7)  MS RSA 8 (CMA 500); and

(8)  MS RSA 9 (CMA 501).

The term "Divestiture Assets" shall also include all types of assets, tangible and intangible, used by Centennial in the operation of its mobile wireless telecommunications services business in the Lake Charles MSA (CMA 197), if plaintiff United States in its sole discretion, after consultation with plaintiff State of Louisiana, determines that defendants must divest Centennial's mobile wireless telecommunications services businesses in the Lake Charles MSA (CMA 197) to ensure a successful divestiture of the Divestiture Assets in the Lafayette LA MSA (CMA 174), LA RSA

3

5 (CMA 458), LA RSA 6 (CMA 459), and LA RSA 7 (CMA 460).  To ensure that the divested

mobile wireless telecommunications services businesses remain viable, ongoing businesses, the

term "Divestiture Assets" shall be construed broadly to accomplish the complete divestiture of

the entire mobile wireless telecommunications services business of Centennial in each of the

CMA license areas being divested.

The Divestiture Assets shall include, without limitation, all types of real and personal

property, monies and financial instruments, equipment, inventory, office furniture, fixed assets

and furnishings, supplies and materials, contracts, agreements, leases, commitments, spectrum

licenses issued by the FCC and all other licenses, permits and authorizations, operational support

systems, cell sites, network infrastructure, switches, customer support and billing systems,

interfaces with other service providers, business and customer records and information, customer

contracts, customer lists, credit records, accounts, and historic and current business plans that

relate primarily to the mobile wireless telecommunications services businesses being divested, as

well as any patents, licenses, sub-licenses, trade secrets, know-how, drawings, blueprints,

designs, technical and quality specifications and protocols, quality assurance and control

procedures, manuals and other technical information defendants supply to their own employees,

customers, suppliers, agents, or licensees, and trademarks, trade names and service marks or

other intellectual property that relate primarily to the mobile wireless telecommunications

services businesses being divested, including:  (i) any intellectual property created during the

time period that the Divestiture Assets are operated by a Management Trustee or Divestiture

Trustee; and (ii) all intellectual property rights under third-party licenses that are capable of being

transferred to the Acquirer(s) either in their entirety, for assets described in (a) below, or through

4

a license obtained through or from defendants, for assets described in (b) below. The Divestiture Assets shall also include 1) Multi-line Consumer Customer contracts if the account billing address is located within any of the CMAs where assets are required to be divested, and 2) Multi-line Business Customer contracts if the primary business address for that customer is located within any of the license areas where assets are required to be divested, and further, any subscriber who obtains mobile wireless telecommunications services through any Multi-line Business Customer contract retained by defendants and who is located within the license areas identified above, shall be given the option to terminate its relationship with defendants, without financial cost, at any time within one year of the closing of the Transaction. Defendants shall provide written notice to these Multi-line Business Customers within 45 days after the closing of the Transaction of the option to terminate.

The divestiture of the Divestiture Assets shall be accomplished by:

(a)     transferring to the Acquirer(s) the complete ownership and/or other rights to the assets (other than those assets used substantially in the operations of defendants' overall mobile wireless telecommunications services business that must be retained to continue the existing operations of the wireless properties that defendants are not required to divest, and that either are not capable of being divided between the divested mobile wireless telecommunications services businesses and those not divested, or are assets that the defendants and the Acquirer(s) agree, subject to the approval of plaintiff United States, shall not be divided); and

(b)     granting to the Acquirer(s) an option to obtain a non-exclusive,

5

transferable license from defendants for a reasonable period, subject to the

approval of plaintiff United States, and at the election of the Acquirer(s),

to use any of defendants' retained assets under paragraph (a) above used in

operating the mobile wireless telecommunications services businesses

being divested, so as to enable the Acquirer(s) to continue to operate the

divested mobile wireless telecommunications services businesses without

impairment.  Defendants shall identify in a schedule submitted to plaintiff

United States and filed with the Court as expeditiously as possible

following the filing of the Complaint, and in any event prior to any

divestiture and before the approval by the Court of this Final Judgment,

any and all intellectual property rights under third-party licenses that are

used by the mobile wireless telecommunications services businesses being

divested that defendants could not transfer to the Acquirer(s) entirely or by

license without third-party consent, the specific reasons why such consent

is necessary, and how such consent would be obtained for each asset.

F.  "Multi-line Business Customer" means a corporate or business customer that contracts with a defendant for the provision of mobile wireless telecommunications services to the corporate or business customers' employees or members over multiple devices.

G.  "Multi-line Consumer Customer" means a consumer that contracts with a defendant for the provision of mobile wireless telecommunications services to the consumer and the consumer's family or group members over multiple devices.

6

H. "Transaction" means the Agreement and Plan of Merger among AT&T Inc., Independence Merger Sub Inc., and Centennial Communications Corp., dated November 7, 2008.

## III. Applicability

A. This Final Judgment applies to defendants AT&T and Centennial, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B. If, prior to complying with Section IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from the acquirer(s) of the assets divested pursuant to this Final Judgment.

## IV. Divestitures

A. Defendants are ordered and directed, within 120 days after consummation of the Transaction, or five calendar days after notice of the entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to plaintiff United States in its sole discretion, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, or, if applicable, to a Divestiture Trustee designated pursuant to Section V of this Final Judgment. Plaintiff United States, in its sole discretion, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, may agree to one or

7

more extensions of this time period not to exceed 60 calendar days in total, and shall notify the

Court in such circumstances. With respect to divestiture of the Divestiture Assets by defendants

or the Divestiture Trustee, if applications have been filed or are on file with the FCC within the

period permitted for divestiture seeking approval to assign or transfer licenses to the Acquirer(s)

of the Divestiture Assets, but an order or other dispositive action by the FCC on such

applications has not been issued before the end of the period permitted for divestiture, the period

shall be extended with respect to divestiture of those Divestiture Assets for which FCC approval

has not been issued until five days after such approval is received. Defendants agree to use their

best efforts to accomplish the divestitures set forth in this Final Judgment and to seek all

necessary regulatory approvals as expeditiously as possible. This Final Judgment does not limit

the FCC's exercise of its regulatory powers and process with respect to the Divestiture Assets.

Authorization by the FCC to conduct the divestiture of a Divestiture Asset in a particular manner

will not modify any of the requirements of this Final Judgment.

B. In accomplishing the divestitures ordered by this Final Judgment, defendants shall

promptly make known, if they have not already done so, by usual and customary means, the

availability of the Divestiture Assets. Defendants shall inform any person making inquiry

regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to

this Final Judgment and provide that person with a copy of this Final Judgment. Defendants

shall offer to furnish to all prospective Acquirers, subject to customary confidentiality

assurances, all information and documents relating to the Divestiture Assets customarily

provided in a due diligence process except such information or documents subject to the

attorney-client or work product privileges. Defendants shall make available such information to

8

plaintiffs at the same time that such information is made available to any other person. Notwithstanding the provisions of this paragraph, with the consent of plaintiff United States in its sole discretion, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, the defendants may enter into exclusive negotiations to sell all or any part of the Divestiture Assets and may limit their obligations under this paragraph to the provision of information to a single potential buyer for the duration of those negotiations.

C. Defendants shall provide the Acquirer(s) and plaintiffs information relating to the personnel involved in the operation, development, and sale or license of the Divestiture Assets to enable the Acquirer(s) to make offers of employment. Defendants will not interfere with any negotiations by the Acquirer(s) to employ any defendant employee whose primary responsibility is the operation, development, or sale or license of the Divestiture Assets.

D. Defendants shall permit prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, and other documents and information customarily provided as part of a due diligence process.

E. Defendants shall warrant to the Acquirer(s) that (1) the Divestiture Assets will be operational on the date of sale, and (2) every wireless spectrum license that relates to the mobile wireless telecommunications services business being divested is in full force and effect on the date of sale.

F. Defendants shall not take any action that will impede in any way the permitting, licensing, operation, or divestiture of the Divestiture Assets.

9

G. Defendants shall warrant to the Acquirer(s) of the Divestiture Assets that there are no material defects in the environmental, zoning, licensing or other permits pertaining to the operation of each asset and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, licensing or other permits relating to the operation of the Divestiture Assets.

H. Unless plaintiff United States, in its sole discretion, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, otherwise consents in writing, the divestitures pursuant to Section IV, or by a Divestiture Trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy plaintiff United States in its sole discretion that these assets can and will be used by the Acquirer(s) as part of a viable, ongoing business engaged in the provision of mobile wireless telecommunications services. The divestiture of the Divestiture Assets, whether pursuant to Section IV or Section V of this Final Judgment:

1) shall be made to an Acquirer or Acquirers that, in plaintiff United States's sole judgment, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the provision of mobile wireless telecommunications services; and

2) shall be accomplished so as to satisfy plaintiff United States in its sole discretion, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, that none of the terms of any agreement between an Acquirer(s) and defendants shall give defendants the ability unreasonably to raise the Acquirer's costs, to lower

10

the Acquirer's efficiency, or otherwise to interfere with the ability of the Acquirer to compete

effectively.

I.  The Divestiture Assets listed in each numbered subsection below shall be divested

together to a single Acquirer, provided that it is demonstrated to the sole satisfaction of plaintiff

United States, after consultation with plaintiff State of Louisiana with respect to Divestiture

Assets located in Louisiana, that the Divestiture Assets will remain viable and the divestiture of

such assets will remedy the competitive harm alleged in the Complaint:

> 1) Northern Louisiana
>> a)  Alexandria MSA (CMA 205);
>> b)  LA RSA 3 (CMA 456);
>
> 2) Southern Louisiana
>> a)  Lafayette MSA (CMA 174);
>> b)  LA RSA 5 (CMA 458);
>> c)  LA RSA 6 (CMA 459);
>> d)  LA RSA 7 (CMA 460); and
>
> 3) Mississippi
>> a)  MS RSA 8 (CMA 500);
>> b)  MS RSA 9 (CMA 501).

Further, if defendants are required to divest Centennial's mobile wireless telecommunications

services business in Lake Charles MSA  (CMA 197) as part of the Divestiture Assets, these

assets must be divested to the Acquirer of the Southern Louisiana Divestiture Assets as defined

in the second numbered subsection above.  In addition to the foregoing, nothing in this section

shall be construed as limiting the ability of an Acquirer to purchase the assets in more than one

numbered subsection, and defendants shall be required to consider bids from potential acquirers

that are contingent on the acquisition of all of the assets in more than one of the numbered

subsections.  With the written approval of plaintiff United States, in its sole discretion, after

consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, defendants or the Divestiture Trustee may sell, to a single acquirer, fewer than all of the assets contained in the numbered subsections above, to facilitate prompt divestiture to an acceptable Acquirer(s).

J.  At the option of the Acquirer(s) of the Divestiture Assets, defendants shall enter into a contract for transition services customarily provided in connection with the sale of a business providing mobile wireless telecommunications services or intellectual property licensing sufficient to meet all or part of the needs of the Acquirer(s) for a period of up to one year. Plaintiff United States, in its sole discretion, may agree to one or more three- to six-month extensions of this one-year time period upon providing notice to the Court.  The terms and conditions of any contractual arrangement meant to satisfy this provision must be reasonably related to market conditions.

K.  To the extent that the Divestiture Assets use intellectual property, as required to be identified by Section II.D, that cannot be transferred or assigned without the consent of the licensor or other third parties, defendants shall use their best efforts to obtain those consents.

### V. <u>Appointment of Divestiture Trustee</u>

A.  If defendants have not divested the Divestiture Assets within the time period specified in Section IV.A, defendants shall notify plaintiff United States, and with respect to the Divestiture Assets in Louisiana plaintiff State of Louisiana, of that fact in writing, specifically identifying the Divestiture Assets that have not been divested.  Upon application of plaintiff United States, and after consultation with plaintiff State of Louisiana with respect to Divestiture

12

Assets located in Louisiana, the Court shall appoint a Divestiture Trustee selected by plaintiff United States and approved by the Court to effect the divestiture of the Divestiture Assets. The Divestiture Trustee will have all the rights and responsibilities of the Management Trustee who may be appointed pursuant to the Preservation of Assets Stipulation and Order, and will be responsible for:

(1)     accomplishing divestiture of all Divestiture Assets transferred to the Divestiture Trustee from defendants, in accordance with the terms of this Final Judgment, to an Acquirer(s) approved by plaintiff United States, in its sole discretion, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, under Section IV.A of this Final Judgment; and

(2)     exercising the responsibilities of the licensee of any transferred Divestiture Assets, and controlling and operating any transferred Divestiture Assets, to ensure that the businesses remain ongoing, economically viable competitors in the provision of mobile wireless telecommunications services, until they are divested to an Acquirer(s), and the Divestiture Trustee shall agree to be bound by this Final Judgment.

B. Defendants shall submit a proposed trust agreement ("Trust Agreement") to plaintiff United States, which must be consistent with the terms of this Final Judgment and which must receive approval by plaintiff United States in its sole discretion, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, who shall communicate to defendants within 10 business days its approval or disapproval of the proposed

13

Trust Agreement, and which must be executed by the defendants and the Divestiture Trustee within five business days after approval by plaintiff United States.

C.  After obtaining any necessary approvals from the FCC for the assignment of the licenses of the Divestiture Assets to the Divestiture Trustee, defendants shall irrevocably divest the remaining Divestiture Assets to the Divestiture Trustee, who will own such assets (or own the stock of the entity owning such assets, if divestiture is to be effected by the creation of such an entity for sale to Acquirer) and control such assets, subject to the terms of the approved Trust Agreement.

D.  After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets.  The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer(s) acceptable to plaintiff United States, in its sole judgment, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V.G of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of defendants the Management Trustee appointed pursuant to the Preservation of Assets Stipulation and Order and any investment bankers, attorneys or other agents, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.

E.  In addition, notwithstanding any provision to the contrary, plaintiff United States, in its sole discretion, after consultation with plaintiff State of Louisiana with respect to Divestiture

14

Assets located in Louisiana, may 1) require defendants to include additional assets, and 2) with the written approval of plaintiff United States, allow defendants to substitute substantially similar assets, which substantially relate to the Divestiture Assets to be divested by the Divestiture Trustee.

F. Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance. Any such objections by defendants must be conveyed in writing to plaintiff United States and the Divestiture Trustee within ten calendar days after the Divestiture Trustee has provided the notice required under Section VI.

G. The Divestiture Trustee shall serve at the cost and expense of defendants, on such terms and conditions as plaintiff United States approves, and shall account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred. After approval by the Court of the Divestiture Trustee's accounting, including fees for its services and those of any professionals and agents retained by the Divestiture Trustee, all remaining money shall be paid to defendants and the trust shall then be terminated. The compensation of the Divestiture Trustee and any professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an incentive based on the price and terms of the divestiture, and the speed with which it is accomplished, but timeliness is paramount.

H. Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestitures, including their best efforts to effect all necessary regulatory approvals. The Divestiture Trustee and any consultants, accountants, attorneys, and

15

other persons retained by the Divestiture Trustee shall have full and complete access to the

personnel, books, records, and facilities of the businesses to be divested, and defendants shall

develop financial and other information relevant to the assets to be divested as the Divestiture

Trustee may reasonably request, subject to reasonable protection for trade secret or other

confidential research, development, or commercial information.  Defendants shall take no action

to interfere with or to impede the Divestiture Trustee's accomplishment of the divestitures.

I. After a Divestiture Trustee is appointed, the Divestiture Trustee shall file monthly

reports with plaintiff United States, after consultation with plaintiff State of Louisiana with

respect to Divestiture Assets located in Louisiana, and the Court setting forth the Divestiture

Trustee's efforts to accomplish the divestitures ordered under this Final Judgment.  To the extent

such reports contain information that the Divestiture Trustee deems confidential, such reports

shall not be filed in the public docket of the Court.  Such reports shall include the name, address,

and telephone number of each person who, during the preceding month, made an offer to acquire,

expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made

an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each

contact with any such person. The Divestiture Trustee shall maintain full records of all efforts

made to divest the Divestiture Assets.

J. If the Divestiture Trustee has not accomplished the divestitures ordered under the Final

Judgment within six months after its appointment, the Divestiture Trustee shall promptly file

with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the

required divestitures, (2) the reasons, in the Divestiture Trustee's judgment, why the required

divestitures have not been accomplished, and (3) the Divestiture Trustee's recommendations.  To

the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The Divestiture Trustee shall at the same time furnish such report to plaintiff United States, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, who shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by plaintiff United States, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana.

K.  After defendants transfer the Divestiture Assets to the Divestiture Trustee, and until those Divestiture Assets have been divested to an Acquirer or Acquirers approved by plaintiff United States pursuant to Sections IV.A and IV.H, the Divestiture Trustee shall have sole and complete authority to manage and operate the Divestiture Assets and to exercise the responsibilities of the licensee and shall not be subject to any control or direction by defendants. Defendants shall not use, or retain any economic interest in, the Divestiture Assets transferred to the Divestiture Trustee, apart from the right to receive the proceeds of the sale or other disposition of the Divestiture Assets.

L.  The Divestiture Trustee shall operate the Divestiture Assets consistent with the Preservation of Assets Stipulation and Order and this Final Judgment, with control over operations, marketing, and sales.  Defendants shall not attempt to influence the business decisions of the Divestiture Trustee concerning the operation and management of the Divestiture Assets, and shall not communicate with the Divestiture Trustee concerning divestiture of the

17

Divestiture Assets or take any action to influence, interfere with, or impede the Divestiture

Trustee's accomplishment of the divestitures required by this Final Judgment, except that

defendants may communicate with the Divestiture Trustee to the extent necessary for defendants

to comply with this Final Judgment and to provide the Divestiture Trustee, if requested to do so,

with whatever resources or cooperation may be required to complete divestiture of the

Divestiture Assets and to carry out the requirements of the Preservation of Assets Stipulation and

Order and this Final Judgment.  Except as provided in this Final Judgment and the Preservation

of Assets Stipulation and Order, in no event shall defendants provide to, or receive from, the

Divestiture Trustee or the mobile wireless telecommunications services businesses any non-

public or competitively sensitive marketing, sales, pricing or other information relating to their

respective telecommunications businesses.

## VI. Notice of Proposed Divestitures

A.  Within the later of two (2) business days following (i) the execution of a definitive

divestiture agreement, or (ii) the filing of the Complaint in this action, defendants or the

Divestiture Trustee, whichever is then responsible for effecting the divestitures required herein,

shall notify plaintiff United States, and with respect to the Divestiture Assets in Louisiana,

defendants shall notify plaintiff State of Louisiana, in writing of any proposed divestiture

required by Section IV or V of this Final Judgment.  If the Divestiture Trustee is responsible, it

shall similarly notify defendants.  The notice shall set forth the details of the proposed divestiture

and list the name, address, and telephone number of each person not previously identified who

offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture

Assets, together with full details of the same.

B. Within 15 calendar days of receipt of notice by plaintiff United States and plaintiff State of Louisiana if notice was given to plaintiff State of Louisiana, plaintiff United States and plaintiff State of Louisiana, if it received notice, may request from defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer. Defendants and the Divestiture Trustee shall furnish any additional information requested within 15 calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within 30 calendar days after receipt of notice or within 20 calendar days after plaintiff United States and plaintiff State of Louisiana, if it received notice,  have been provided the additional information requested from defendants, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever is later, plaintiff United States, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, shall provide written notice to defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture. If plaintiff United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V.F of this Final Judgment. Absent written notice that plaintiff United States does not object to the proposed Acquirer or upon objection by plaintiff United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by defendants under Section V.F, a divestiture proposed under Section V shall not be consummated unless approved by the Court.

19

## VII.  **Financing**

Defendants shall not finance all or any part of any divestiture made pursuant to Section IV or V of this Final Judgment.

## VIII.  **Preservation of Assets**

Until the divestitures required by this Final Judgment have been accomplished, defendants shall take all steps necessary to comply with the Preservation of Assets Stipulation and Order entered by this Court and cease use of the Divestiture Assets during the period that the Divestiture Assets are managed by the Management Trustee.  Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX.  **Affidavits**

A.  Within 20 calendar days of the filing of the Complaint in this matter, and every 30 calendar days thereafter until the divestitures have been completed under Section IV or V, defendants shall deliver to plaintiffs an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit also shall include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if

20

any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by plaintiff United States, after consultation with plaintiff State of Louisiana with respect to Divestiture Assets located in Louisiana, to information provided by defendants, including limitation on information, shall be made within 14 calendar days of receipt of such affidavit.

B. Within 20 calendar days of the filing of the Complaint in this matter, defendants shall deliver to plaintiffs an affidavit that describes in reasonable detail all actions defendants have taken and all steps defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants shall deliver to plaintiffs an affidavit describing any changes to the efforts and actions outlined in defendants' earlier affidavits filed pursuant to this section within 15 calendar days after the change is implemented.

C. Defendants shall keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after such divestitures have been completed.

## X. **Compliance Inspection**

A. For the purposes of determining or securing compliance with this Final Judgment or whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, authorized representatives of the United States Department of Justice (including consultants and other persons retained by plaintiff United States) shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to defendants, be permitted:

      (1)     access during defendants' office hours to inspect and copy, or at plaintiff

United States's option, to require defendants to provide hard copy or electronic

copies of, all books, ledgers, accounts, records, data and documents in the

possession, custody, or control of defendants, relating to any matters contained

in this Final Judgment; and

(2)     to interview, either informally or on the record, defendants' officers,

employees, or agents, who may have their individual counsel present, regarding

such matters.  The interviews shall be subject to the reasonable convenience of

the interviewee and without restraint or interference by defendants.

B.  Upon the written request of an authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, defendants shall submit written reports or response

to written interrogatories, under oath if requested, relating to any of the matters contained in this

Final Judgment as may be requested.

C.  No information or documents obtained by the means provided in this section shall be

divulged by plaintiff United States to any person other than an authorized representative of the

executive branch of plaintiff United States, plaintiff State of Louisiana, or, pursuant to a

customary protective order or waiver of confidentiality by defendants, the FCC, except in the

course of legal proceedings to which plaintiff United States is a party (including grand jury

proceedings), or for the purpose of securing compliance with this Final Judgment, or as

otherwise required by law.

D.  If at the time information or documents are furnished by defendants to plaintiff United

States, defendants represent and identify in writing the material in any such information or

documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal

22

Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then plaintiff United States shall give defendants ten calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.  No Reacquisition

Defendants may not reacquire or lease any part of the Divestiture Assets during the term of this Final Judgment.

## XII.  Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII.  Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XIV.  Public Interest  Determination

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making

copies available to the public of this Final Judgment, the Competitive Impact Statement, any

comments thereon, and plaintiff United States's response to comments.  Based upon the record

before the Court, which includes the Competitive Impact Statement and any comments and

response to comments filed with the Court, entry of this Final Judgment is in the public interest.


**Date:** February 10, 2010


                                   Court approval subject to procedures of Antitrust
                                   Procedures and Penalties Act, 15 U.S.C. § 16

                                   **United States District Judge**